MFD: 2018R00288

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

DEAN ALLEN MAXFIELD,

Defendant.

\* CRIMINAL NO. 19-240
\*
\* (Conspiracy, 18 U.S.C. § 371;
\* Theft of Government Property,
\* 18 U.S.C. § 641; Aiding and Abetting,
\* 18 U.S.C. § 2; Forfeiture, 18 U.S.C.
\* § 981(a)(1)(C), 21 U.S.C. § 853, 28
\* U.S.C. § 2461(c))

\*\*\*\*\*\*\*

## INDICTMENT

### COUNT ONE

(Conspiracy to Commit Theft of Government Property)

The Grand Jury for the District of Maryland charges that:

**Introduction**

At all times relevant to the charges in this Indictment:

1. The Office of Personnel Management ("OPM"), Pursuant to Title 5 of the United States Code, had administrative and oversight authority over the Civil Service Retirement System ("CSRS"). Employees who received retirement benefits were known as annuitants. Any employee whose federal service commenced on or before December 31, 1986 had retirement coverage under the CSRS. Retirement annuity benefits were generally issued directly to retirees; however, the CSRS also permitted the issuance of survivor annuity benefits, which allowed for ongoing payments to a spouse or other dependent after a retiree died. Upon the death of a retiree, recurring monthly payments were made to a surviving spouse if the retiree elected a reduced annuity while alive in order to provide for survivor annuity benefits after death. The entitlement to survivor annuity benefits, like retirement annuity benefits, ceased upon the death of the

1

surviving spouse or dependent.

2. The Defendant, **DEAN ALLEN MAXFIELD** ("**MAXFIELD**") is the son-in-law of H.B., a deceased CSRS pension beneficiary.

3. **MAXFIELD** married T.M., H.B.'s daughter, in or about the year 2004.

4. H.B. died on or about February 12, 2012.

5. At the time of H.B.'s death, OPM was paying H.B. approximately $1,867 per month in CSRS retirement and survivor annuity benefit (i.e., pension) payments by way of direct deposit to a bank account in H.B.'s name.

6. After H.B.'s death, the account that remained in her name was funded almost exclusively by monthly pension payments by OPM.

## Object of the Conspiracy

7. It was the object of the conspiracy that **MAXFIELD** and T.M. would steal and convert to their own use H.B.'s retirement benefits, to which they were not entitled, after H.B.'s death, by failing to disclose H.B.'s death to OPM and spending the payments OPM made each month through retail purchases, cash withdrawals, and checks.

## Manner and Means of the Conspiracy

8. It was a part of the conspiracy that **MAXFIELD** and T.M. did not report H.B.'s death to OPM so that OPM would continue to make pension payments.

9. It was further a part of the conspiracy that **MAXFIELD** and T.M. spent and converted to their own use pension funds as OPM deposited them into the account that remained in H.B.'s name each month through retail purchases, cash withdrawals, and checks.

10. It was further a part of the conspiracy that **MAXFIELD** would drive T.M., who was unable to drive, to the bank to make withdrawals from the account that remained in H.B.'s account.

## The Charge

11. Beginning in or about February 2012, and continuing thereafter until in or about February 2016, in the District of Maryland and elsewhere, the defendant,

**DEAN ALLEN MAXFIELD,**

knowingly and willfully conspired and agreed with T.M. and other persons both known and unknown to the Grand Jury, to commit an offense against the United States, and any agency thereof; that is theft of government property, as set forth below and in violation of Title 18, United States Code, Section 641.

## Overt Acts in Furtherance of the Conspiracy

12. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Maryland and elsewhere:

    a. On or about July 13, 2012, **MAXFIELD** wrote a check to himself in the amount of $500 on the account of H.B and negotiated it.

    b. On or about September 3, 2013, **MAXFIELD** negotiated a check written on the account of H.B. in the amount of $1,000.

    c. On or about December 4, 2013 **MAXFIELD** made a payment on his bail bond of $100 from the account of H.B. to Platinum Bail Bonds.

    d. On or about May 31, 2015, **MAXFIELD** wrote a check to himself in the amount of $200 on the account of H.B. and negotiated it.

    e. On or about June 1, 2015, **MAXFIELD** wrote a check to himself in the amount of $160 on the account of H.B. and negotiated it.

    f. On or about June 3, 2015, **MAXFIELD** wrote a check to himself in the amount of $200 on the account of H.B. and negotiated it.

18 U.S.C. § 371

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 10 and Paragraph 12 of Count One of the Indictment are incorporated by reference herein.

2. Between in or about February 2012 and in or about February 2016, in the District of Maryland, the defendant,

**DEAN ALLEN MAXFIELD,**

did embezzle, steal, purloin, and knowingly convert to his use and the use of another, money of the United States, whose value exceeded $1,000, namely CSRS retirement and survivor annuity benefits payments, to which he was not entitled.

18 U.S.C. § 641
18 U.S.C. § 2

## **FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under Counts One and Two of this Indictment.

2. As a result of the offense set forth in Counts One and Two of the Indictment, the defendant,

**DEAN ALLEN MAXFIELD,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property, that is, at least $78,201.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

_____
Robert K. Hur
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

_____
Foreperson

_5/9/19_____
Date